## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **KRIS ALLFREY** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-0499** |
| | ) | |
| **FAIRHOPE MOTORCOACH RESORT** | ) | |
| **CONDOMINIUM OWNERS** | ) | |
| **ASSOCIATION, INC., JAMES PAT** | ) | |
| **ACHEE, DAVID DUHE and WILLIAM** | ) | |
| **DOCKERY** | ) | |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT

COMES NOW, plaintiff Kris Allfrey, by and through the undersigned counsel, and hereby files this Verified Complaint for discrimination, retaliation, defamation, defamation *per se,* libel, and false light invasion of privacy against Defendants Fairhope Motorcoach Resort Condominium Owners Ass'n., Inc., James Pat Achee, William Dockery, and David Duhe arising from their malicious and negligent statements blaming Plaintiff for the denial of coverage under a Directors and Officers Insurance policy issued to Fairhope Motorcoach Association Board of Directors thereby causing the Unit Owners of Fairhope Motorcoach Resort Condominium Owners Association to pay special assessments to cover attorney's fees to defend the Association and indemnify the Board of Directors with regard to

*Heimkes v. Fairhope Motorcoach Resort Condominium, Inc.*, 05-DV-2021-900267.00 and in support thereof states as follows:

## PARTIES

1.      Plaintiff Kris Allfrey is over the age of nineteen, a resident of Ohio and has an association or relationship with Mark Heimkes, a disable persons, as defined in the Americans with Disabilities Act and/or the Fair Housing Amendment Act of 1988.

2.      Defendant Fairhope Motorcoach Resort Condominium Owners Association, Inc. ("FMR COA") is a non-profit domestic corporation responsible for the administration, operation, maintenance and rental of individual units in the Fairhope Motorcoach Resort along with the common elements contained within FMR used by owners and renters. FMR is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A)..

3.      Defendant James Pat Achee ("Achee") is over the age of nineteen and a resident of Baldwin County, Alabama.

4.      Defendant William Dockery ("Dockery") is over the age of nineteen and a resident of Baldwin County, Alabama.

5.      Defendant David Duhe ("Duhe") is over the age of nineteen and believed to be a resident of Louisiana who owns property in Baldwin County, Alabama, wherein the alleged conduct occurred.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the claims asserted herein pursuant to 42 U.S.C. § 3613 and 28 U.S.C § 1331.

7.      This Court has supplemental jurisdiction over the state laws claims asserted herein pursuant to 28 U.S.C. § 1367(a).

8.      Plaintiff's claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

9.      Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

10.      Fairhope Motorcoach Resort Owners Ass'n., Inc. owed Plaintiff a duty not to discriminate or allow others to discriminate in violation of the law against him or to defame, slander him as a means of deflecting from their own illegal acts as alleged herein.

11.      Plaintiff Kris Allfrey ("Allfrey"), through his company TLW Alabama Properties, LLC, ("TLW Ala Prop"), accesses and enjoys the use of Unit 45 of Fairhope Motorcoach Resort Condominium.

12.      At all relevant times, Defendants were and are Directors and Officers of Fairhope Motorcoach Resort Condominium Owners Association ("FMRCOA").

13.    In their respective positions, Defendants had an obligation to be informed and either know or should have known that FMRCOA did not already possess Directors and Officers Insurance ("D&O Insurance") on or before November 13, 2020.

14.    On or about November 13, 2020, Allfrey, as agent for TLW Ala Prop, reviewed and inspected the official records of FMRCOA, wherein he noticed FRMCOA did not possess D&O Insurance coverage.

15.    On or about November 13, 2020, Allfrey made Defendants aware of this fact during the records review of the FMRCOA records.

16.    Instead of agreeing with and admitting the truth, Defendant Achee stated at the November 14, 2020, 2020 Annual Meeting, with the agreement of the Defendants and other Directors, that he believed the Association had D&O Insurance and would check with the Insurance Agent to confirm.

17.    On or about January 12, 2021, the Defendants caused an email to be sent by the FMR Host stating, "Good Day Owners - we have one last outstanding issue from the Annual Meeting regarding D & O Insurance. Please note that a D & 0 Policy does exist for the Fairhope Motorcoach Resort Association."

18.    On or about January 23, 2021, Allfrey, as agent for TLW Ala Prop again, reviewed and inspected the official records of FMRCOA, wherein he noticed FRMCOA still did not possess a D&O Insurance policy.

19.    On or about January 23, 2021, Allfrey was presented by the Defendants, during the records review, a D&O Insurance Application dated January 11, 2021.

20.    On or about March 4, 2021, Plaintiff replied to an email sent out by the FMRCOA BOD about being sued. In the email Plaintiff states,

> "Here again we find the Developer and the Board being misleading and secretive. The Board and the Association were served a copy of the lawsuit, which speaks for itself as to why it was filed and what necessitated the filing of the lawsuit. The lawsuit is a public record and is available to anyone through Baldwin County." "Due to the lack of candor on the part of the Developer and the Board, by not providing a copy of the suit, I have gotten a digital copy of the lawsuit and it is attached to this email." On the same day I received a response from James Soboleski stating, "I have a great idea,""Why don't you, and take Mark and Julie with you, put your property up for sale and get out,""Jim Jim Soboleski 847-878-4034"

21.    On or about March 5, 2021, Plaintiff received an email from the FMR Host with the subject line, "Forwarding Message – Proposal" which stated the following in the body of the email:

> I've been asked to forward the email below to all FMR Owners':
>
> We would like to propose the creation of a new social event at the Fairhope Motorcoach Resort:
>
> "The BAMer's Club"
>
> You know, like Alabama, but in this case the BAM would stand for "Bitch And Moan".   We could meet on Monday nights in the Clubhouse.  It would be like Mahjong or Bingo, but without the games. We would have easels with

crayons, and maybe even finger paints. We would gather to document and discuss our personal complaints, untold grievances, and the terrible hardships we have had to endure the week before.

We would complain about topics like:
- The clubhouse being closed during a global pandemic and the infringement on our freedoms.
- Our neighbor's concrete pad being ¼" wider than ours. So unfair!
- The beverage cart not stocking our favorite beer. We pay dues too.
- Laundry being left in the washer for exactly 30 seconds after the load was finished. Some owners are so inconsiderate.
- The water fountain on the pond is either too far or too close to our site. We are not sure of what the ideal spot is, we just know we do not like where it was installed because nobody consulted with us.
- Our neighbor across the road has a bumper sticker of a team we do not like, and we must see it every day. This is an insult to our values!
- How come nobody asked us where the dumpster should be located?
- Our neighbor to the left has a little dog and we prefer big dogs.
- The temperature of the pool.
- The temperature of the sun.
- The brand of toilet paper stocked in the Clubhouse.
- The speed at which the earth rotates.
- The flowering shrubs around the Clubhouse have white petals, we demand pink.
- The BOD held a regularly scheduled meeting and did not inform us. How dare they!
- Any decisions being made without our input – after all, we are super important people – at least in our own child-like, narcissistic minds.
- The BAMer's Club would also strategize on how to take a proactive approach to keep these indignities from repeatedly happening to we, the unfortunate ones.

The club would be exclusive to the toddlers among us. Normal functioning adults would not be allowed.

After each weekly meeting adjourns, we would do a victory lap on our little tricycles around the resort!

We trust you will consider our proposal. 

Respectfully submitted,
Dan & Sue Campia
Lot #38

Fairhope Motorcoach Resort Host
251.622.2340
11251 State Highway 104
Fairhope, Alabama 36532
https://fairhopemotorcoachresort.com/

22.    Plaintiff then replied to this email and received an email message with the subject line stating, "Re:FW: Forwarding Message – Proposal" and contained the following in the body of the email:

"Kris.  You are barking up the wrong tree sending us an email like that.  We have the utmost respect for Pat Achee as a developer and as a person.  FMC is an absolutely wonderful development and extremely well taken care of. We have owned in numerous places all over and this is one of the nicest around.  Your constant reference to "his" Board is weird as I recall you being there the day the owners voted this Board in.  They do a good job and it is a sacrifice on their part with all the time it takes.  Some people are not cut out for community living.
I ordinarily ignore silly diatribe but you stepped on my toe. I will ask Ellen to send this to all owners. Becky Nichols"

Moments later Plaintiff received an another email reply from Gary Nichols with the same subject lin as above and stating, "BUCKLE UP BUTTERCUP!"

23.     On or about March 6, 2021, Plaintiff received an email from Warren Ford with the subject line, "Heimkes lawsuit" with a word file attached containing the following:

> Dear Mr. Allfrey,
> In response to your previous emails addressed to all the owners here, I am perplexed at your involvement with the Heimke's lawsuit. It is my understanding that David Shellers has been hired to represent them. As such, your condescending emails to us do not help your next door neighbors case, in fact all that your emails do is to infuriate and antagonize all of us here. From my perspective, your emails are unnecessary, irrelevant, and unprofessional.
>
> In closing, I should like to request that you do not include me in any further emails that you think are informative . I find them bothersome and immature in nature.
>
> Warren Ford, Site 13, FMCR

The FMR Host then forwards this email with its attachment to all owners in FMRCOA.

24.     On or about March 5, 2021, Plaintiff replied to Becky Nichols email of March 5, 2021 with the following statement:

> Becky,
> I will forward your message for you. Pat Achee is a liar. I never called him a thief.
> He has told lies about me. He has told lies about Mark. He treats some owners in here like they are garbage.
> If that is the type of person you respect, that is your choice, but I will stand for the truth.
> I will also continue to tell every owner in this resort the truth.

Pat Achee can continue to lie and turn owners against owners, that is why the Association is being sued in the first place.

25.    On or about March 8, 2021, Plaintiff placed a phone call to Cindy Vines of SSIA, the insurance agent for FMRCOA, to discuss the lawsuit filed by Mr. Heimkes, a disabled person. Plaintiff followed up this phone call with an email to confirm the conversation and to provide documentation to SSIA. The subject line of the email stated, "D & O Policy – Fairhope Motorcoach Resort." In the body of the email plaintiff put the following:

Cindy,
Per our discussion by phone this morning.
I have attached the following documents.

First letter sent by the Association on 12/2/20

Response by the Heimkes to FMR through his attorney, sent on 12/29/20

Response of FMR Attorney to Heimkes Attorney, sent on 1/11/21

Declaration of Fairhope Motorcoach Resort Condominium Association, date 2/14/19

As you will see the Association through the Board initiated action on 12/2/20, received a response on 12/29/20 and sent another letter on 1/11/21 which I believe is on about the time you received an application for D & O Insurance from the Fairhope Motorcoach Association for coverage.
I have included the Declaration because at Section 8.08, Indemnification, in our Governing Documents, it states that a Director or Officer that is adjudged guilty of willful

misfeasance or malfeasance in the performance of his duties will not be indemnified.

I am also attaching my deed to Lot #45 and my LLC for the Company that purchased the property, per our discussion of getting a copy of the D & O Policy.

Should you need anything further, let me know by email or phone. My cell number is 713-851-9823

26.     On or about March 11, 2021, Plaintiff sent a follow up email to Cindy

Vines with SSIA stating the following in the body of the email:

Cindy,

I am following up from our conversation on Monday in reference to obtaining a copy of the policies of Fairhope Motorcoach Resort.

This will include the property, liability and D & O policies. Lot #45 is owned by a LLC that has a financial interest in the resort and the Association and is a covered entity of the aforementioned policies.

Please let me know when we can expect to receive the copies.

27.     Later that afternoon, Plaintiff sent another email to Cindy Vines of

SSIA with the subject line, "Re: URGENTRE: D & O Policy – Fairhope Motorcoah

Resort" that had the following in the body of the the email:

Cindy,

Have you notified the insurance carrier of the application fraud?

28.     On or about March 12, 2021, Plaintiff received a CC of an email from Cindy Vines of SSIA to Andrew D. Hosterman with the subject line, "Fairhope Motorcoach Resort COA Inc." having an attachment of a pdf with the email thread between Cindy Vines and Plaintiff, with the following in the body of the email:

> Andrew, please see attached email received from unit owner Fairhope Motorcoach Resort pertaining to Fairhope Motorcoach Resort pending claim.

29.     Plaintiff then sent an email to Andrew D. Hosterman with the subject line, "[EXTERNAL] FW: Fairhope Motorcoach Resort COA Inc." with the following in the body of the email:

> Mr. Hosterman,
>
> Can you contact me about the policy that was issued for Fairhope Motorcoach Resort in Fairhope, AL and a claim that has been filed by the Association?
>
> My cell number – 713-851-█████

30.     Mr. Hosterman responded to Plaintiff soon after with the following in the body of the email:

> Please advise what your position is relative to Fairhope Motorcoach Resort COA. I can only provide information to parties who are considered to be insureds under our policy. I note that you are not named as a party to the litigation.

31.     Plaintiff responded to Mr. Hosterman email with the following in the body of the email:

Mr. Hosterman,

I own TLW Alabama Properties, LLC which is the owner of Lot #45 in Fairhope Motorcoach Resort.

As a Member of the Association, TLW Alabama Properties, LLC is a party to the suit because the Association has been sued.

I can provide you with the deed and/or the formation documents for TLW Alabama Properties, LLC, if needed.

32.   Mr. Hosterman then responded back by email with the following in the body of the email:

That will not be necessary. As a lot owner you are not an insured under our policy and accordingly I cannot provide any policy information to you. If the Association is willing to share it with you, that is their right, but that is their decision to make.

I do not agree that you are a party to the suit, but even if you are correct it does not change the above issue.

33.   On or about April 15, 2021, FMR Host sent out an email with the subject line, "Special Board Meeting," in the body of the email was the following:

Good Day Owners,

Please note that there will be a Special Board Meeting on April 18, 2021 at 4:00pm CDT to discuss the legal cost in defending the Heimkes Lawsuit. Attendance can be made in person at the FMR Owners' Lodge or via Zoom.

We would greatly appreciate your RSVP if you plan on attending via Zoom, so we may send the appropriate link out to you prior to that meeting. Please respond to this email if you plan to attend via Zoom.

Regards,
FMR COA Board of Directors

34.     On or about April 18, 2021, the FMRCOA BOD held a meeting by Zoom for them to vote to have a Special Legal Assessment against the owners of FMRCOA units to pay for the Heimkes Litigation attorney fees.

35.     On or about April 19, 2021, Plaintiff received an email with a word document attached named, FMRCOA Heimkes Legal Assessment INVOICE – Lot #45," and contained the following in the body of the email:

> Kris,
>
> Please note the attached FMR Special Legal Assessment Invoice as discussed during the Owners meeting on April 18, 2021.
>
> Regards,
> Sheila Rosenbohm
> FMR Treasurer

36.     On or about April 27, 2021, the Defendants were served a letter through their Attorney, C. Andrew Harrell, Jr., by CNA, Claims Specialist Nara Azar, explicitly stating that the Heimkes Claim was denied based on the "material misrepresentations" by James P. Achee, the FMR COA Board of Directors and Grand Properties, LLC. The letter indicates that Continental would be entitled to rescind the policy based on one or more "material misrepresentations" in the January 2021 application.

37.   On or about May 11, 2021, Plaintiff published an email to the FMRCOA BOD President and copied all members of the FMRCOA. In the email he chided the FRMCOA BOD for allowing FMRCOA to be sued for discriminating against Mark Heimkes, a disabled person and not pleading defenses that were available to FMRCOA, and he included the following in the body email:

> To the President of the Board of Fairhope Motorcoach Association,
>
> You are hereby notified in writing that I have filed a claim with my insurance company, United States Liability Insurance, due to your actions in not defending the Association in the Heimkes Lawsuit and putting the defenses of the Board, the Individual Board Members own personal defenses and interest, the defenses of the Declarant and the defenses of Grand Properties in front of the Association and ultimately the Owners.
>
> You are barred by our Condominium Association Documents, Alabama Law and Federal Law from discriminating against an owner. You have offered several defenses, as I understand it, for the Boards conduct, the individual Board Members conduct as well as for the Declarant and Grand Properties actions but none of the defenses that you have plead have been on the behalf of the Association and the Owners to eliminate their exposure and responsibility for the litigation.
>
> The Association has multiple defenses that, through your attorneys, the Board has failed to plead on the behalf of the association. These include but are not limited to the following:

1.) The Board committed a Misdemeanor Criminal Act under Alabama Law when it discriminated against an owner who is disabled and has a service animal that is authorized by ADA and FHA by harassing the owner and not allowing him with his service animal to be in the common areas of the resort.

2.) The Harassment of an Owner by the Board, the Declarant and Grand Properties are acts and actions committed by the individuals and are not acts of the Association.

3.) The Board was not authorized to discriminate against an owner under our Condominium Documents, Alabama Law & Federal Law therefore the Association is not liable for the actions of the Board.

4.) The Board is barred from indemnification by the owners, under our Condominium Documents, if the officers are guilty of willful misfeasance or malfeasance in the performance of their duties.

5.) Three of the Board Members have violated their fiduciary duties to the Association and the Owners, put their own interest in front of the owners and those individuals are thereby responsible for their breach and the resulting litigation.

6.) Two of Board Members have violated the standard of due care and have pursued the defense of litigation that is detrimental to the Association and the Owners and for which the board and the Association has no insurance coverage to defend against the litigation.

7.) The Board Failed to put in place Directors and Officers Insurance as required by our Condominium Documents and Alabama Law therefore the Board Members are Individually liable as this is a breach

of their Fiduciary Duties and their Standard of Care that is required by Board Members.

8.) The Board failed to disclose on the Director and Officers Insurance Application that was submitted on January 11, 2021 that they had pending litigation and as such I believe coverage under that policy has been denied thereby making the Declarant and the Individual Board responsible for all cost associated with the defense of the litigation including Attorney Fees.

9.) The Declarant failed to obtain Directors and Officers Insurance in accordance with our Condominium Documents and Alabama Law under the "ACT" so therefore the Declarant is responsible for all litigation expenses, including attorneys' fees for the Declarants Breach of Fiduciary Duties in not obtaining insurance to protect the Association and the Owners.

Your actions have resulted in the needless expenditure of expenses and attorney fees that you now attempt to burden the Association and the Owners Individually with by the Board accessing a Legal Assessment, known as the "Heimkes Legal Assessment" against the 45 Lot Owners that make up the Association.

In accordance with my requirements under my insurance policy you are requested to provide the following items to me so they may be tendered to my insurance company for processing of the claim. The items are as follows, any letters, emails, correspondence, demands, notices, summonses or legal papers, received in connection with the claim or suit. Failure for you to do so may jeopardize coverage under my policy, which will create another cause of action against the Board and the Board Members Individually for the Breach of Fiduciary Duty and Breach of the Standard of Care. I have attached a redacted copy of

email sent to TLW Alabama Properties, LLC requesting such items from them.

I further believe that an Irreconcilable Conflict exist for the Attorneys that are attempting to represent the Association as well as the Individual Board Members, the Declarant and Grand Properties and as such these attorneys may be subjected to a malpractice claim by the Association and Individual Owners. For this reason, I am asking that separate counsel be hired to represent the Association solely and for such attorney to plead all legal defenses available to the Association and to the Owners regardless of the interest or effect to the Individual Board Members, the Declarant and Grand Properties.

I continue to reserve all my legal rights against any and all parties involved in the Heimkes Litigation in any capacity.

As time is of the essence, a response to this email is expected within 7 days and failure to respond may result in filing of suit in Circuit Court in Baldwin County to seek legal remedy for such failure to respond and failure to provide the necessary items as requested by myself and my Insurance Company.

This notice is served on the behalf of TLW Alabama Properties, LLC and as such is not a legal opinion and is not offered as such. The opinions and facts stated in this correspondence are that of TLW Alabama Properties, LLC and are conveyed for the purpose of providing such information of the parties in the Heimkes Litigation to an Attorney and/or Insurance Company for Representation of TLW Alabama Properties, LLC in its defense against the Heimkes Litigation and the conduct of all the Defendants and Parties in that litigation.

38.     On or about September 16, 2022, FMRCOA Board held a meeting of

members at which the 2021 Annual Meeting would be held on November 5, 2022 at

3 PM and this was documented in the meeting minutes of the Board. This was an intentional act of the Board to hold the meeting on a Friday afternoon to limit attendance of owners to the meeting versus having the meeting on a Saturday morning.

39.    On or about October 13, 2022 the FMRCOA Board sent out an email notifying Owners that the 2021 Annual Meeting was now going to held at 4 PM on November 5, 2021. This email also informed Owners that their would be a FMR Rental Program Meeting on Saturday, November 6, 2021 and that they would only provide information to those Owners already participating in the program. Many Owners sent emails and communicated that they could not attend the meetings in person and asked for the meeting to be by Zoom, the Board refused by stating that:

> "**while the lawsuit [*Heimkes District Court Filing – 05-DV-2021-900267.00*] against the Association is still active, we will not use Zoom for any Association meeting.**"

40.    On or about October 15, 2021, Plaintiff Allfrey responded to an email chain about holding the two meeting by zoom and stated the following in the his response:

> "**What does the lawsuit have to do with holding association meetings?**
> **Association meeting are about the owners and limiting owners ability to participate in those meetings is inappropriate and does not serve to further the interest of the owners.**

> **Every owners should ask themselves the following questions.**
> **What is the Board trying to hide from the owners?**
> **Why is the Board afraid of having owners participate in the association meeting by Zoom?**
> **Are the best interest of all owners being protected by restricting participation of the owners that do not live in or near Fairhope?"**

41.     On or about October 23, 2021 FMRCOA Board sent out a "Notice of 2021 FMR COA Annual Meeting" by email. In the email it states that:

> **"The FMR Rental Program Meeting will be held on Saturday, November 6th at 9:00 AM CDT at the Owners' Lodge.  The meeting is open to all Owners. However, only those Owners currently in the FMR Rental Program will be allowed to speak and/or vote during the meeting."**

42.     Plaintiff Allfrey was unable to attend the November 5, 2021 Annual Meeting due to the meeting being held on Friday afternoon and was unable to attend the Saturday meeting due to his arrival to FMR being after 1 PM on November 6, 2022.

43.     Even though Defendants were on notice of why the Heimkes claim was denied, the Defendants, on or about November 5, 2021, at the 2021 Annual Meeting, indicated "they had applied for D & 0 insurance in November, and it was approved some date in January" they further advised, "…the insurance was denied because one of the owners [Allfrey] reached out to the insurance company under the pretense, he was representing FMR and advised them of the lawsuit…"

44.     On or about November 9, 2021, Allfrey confronted Defendant Dockery behind Allfrey's bus about the statement that was made by Defendants Achee and Duhe at the 2021 Annual Meeting at which Dockery was in attendance. Dockery repeated the claim that the Heimkes Claim was denied because of Allfrey's "misrepresentation and lies" Allfrey attempted to get Defendant Dockery to admit there was a different reason why the claim was denied, and Defendant Dockery stated it was because Cindy Vines, the insurance agent, made a mistake. Allfrey questioned Defendant Dockery why he had not shared this claim at the 2021 Annual Meeting and got no response. Defendant Dockery then stated he would not believe Allfrey even if everything he did and said was in writing.

45.     On or about November 9, 2021, at or around 1:58 P.M., Allfrey sent Defendant Dockery an email confirming their conversation earlier in the day and asking why this information about insurance agent Vines was not shared with other owners and why the Board has not held Vines accountable.

46.     On or about November 9, 2021, sometime after 2 P.M., Allfrey contacted SSIA Insurance about Defendant Dockery's claim about Cindy Vines's mistake, and he was told by the Director of Public Relations that they would check with Mrs. Vines and get back with him about Defendant Dockery's claim. To this day, SSIA has not contacted Allfrey about the FRMCOA or the "mistake" made by Cindy Vines.

47.     On or about November 9, 2021, at or around 4:07 P.M., Defendant Dockery sent an email confirming their conversation earlier in the day and stating, "that is not what I said about Cindy," but not denying the accusations he leveled against Allfrey about the claim being denied because of him.

48.     Plaintiff Allfrey would have no way of knowing that Defendants had received a letter from CNA Insurance on April 27, 2021 informing them that the reason the Heimkes Claim was denied was because of a "material Misrepresentation" that was made by Achee in the application for D & O Insurance on January 11, 2021. Production of that Document to the plaintiff would not occur until the Document Production in the *TLW Ala Prop vs. FMRCOA* litigation 05-CV-2022-900175.00, on June 2, 2022. Allfrey did not thoroughly review and come to understand the letter's contents until July 18, 2022.

49.     On January 2, 2022, Allfrey submitted his amended affidavit in support of Mark Heimkes opposition to FMRCOA's Motion to Enforce Court Order, wherein he averred about an event that occurred on December 30, 2021, that was materialy misrepresented to the court in the motion. Plaintiff also stated in the affidavit that, "I believe that Mr. Overall had intentionally placed himself in proximity of Rex to invoke a response and remained there, in an attempt, to get a further response. I have seen video of David Duhe doing the same behavior on another occasion.  These staged incidents have become a habit of Board Members,

their spouses, and their supporters in the resort. They do appear to be intentional acts designed to harass and intimidate Rex to further their legal position.

50.     On February 18, 2022, Allfrey submitted his affidavit in support of Mark Heimkes' district court case in an effort to combat FMRCOA and indiviaul defendants false argument that FMRCOA did not rent units to the public.

51.     On or about July 18, 2022, Allfrey reviewed a D&O Insurance application dated November 18, 2020, that was included in the production of documents produced in the *TLW Ala Prop vs. FMRCOA* litigation, which indicates that FMRCOA had not even applied for D&O Insurance coverage until after the 2020 Annual Meeting that was held on November 14, 2020, and had knowingly spread false information and lies about him to other FMRCOA Unit Owners even prior to the 2021 Annual Meeting.

52.     On or about August 5, 2022, Allfrey wrote Defendants demanding they stop making false and defamatory statements about Allfrey and publishing a retraction and attached evidence in support thereof.

53.     That five or more days have passed since Allfrey made a demand of Defendants to retract the false statements.

54.     That Defendants have failed or refuse to publish a full and fair retraction.

55.     On or about August 12, 2022 defendant James Pat Achee, individually and on behalf of his company, Grand Properties, LLC filed suit against Plaintiff

alleging defamation, tortious interference with a business relations, and conspiracy to commit tortious interference for Plaintiffs defending of Mark Heimkes as detailed herein above.

56.     Defendant Achee's actions are acts of retaliation and discrimination as they are based upon Plaintiff's helping Mark Heimkes obtain a reasonable accommodation under the FHAA.

## CAUSES OF ACTION

### COUNT I
### Discrimination

57.     Plaintiff repeats and realleges each and every allegation of the Complaint as if set forth fully in this ccause of action.

58.     Defendant did unlawfully coerce, intimidate, threaten, interfere, and discriminate against plaintiff in the exercise and enjoyment of the rental of Units in FMR for having aided and encouraging Mark Heimkes, a disabled person in the exercise and enjoyment of his rights granted and protected by Section 3601, 3604, and 3605 of 42 U.S.C.

59.     The acts of the Defendants were done with the intent of causing extreme emotional distress and were a proximate cause of the damage Allfrey suffered from their conduct. Defendant's actions, which caused mental anguish, severe psychological and emotional distress, as well as physical distress to Allfrey, were beyond the bounds of decency.

60.     The extreme and outrageous acts of the Defendants far exceed malicious, harmful, or offensive conduct resulting in humiliation, shame, anxiety,

depression, weight gain, loss of consortium, insomnia, loss of respect in the public eye, and stress.

## COUNT II
## Retaliation

61.    Plaintiff repeats and realleges each and every allegation of the Complaint as if set forth fully in this cause of action.

62.    Defendants actually intended or were improperly motivated in their decision to discriminate against plaintiff and did unlawfully coerce, intimidate, threaten, interfered, and retaliated against plaintiff in the exercise and enjoyment of the rental of Units in FMR for having aided and encouraging Mark Heimkes, a disabled person in the exercise and enjoyment of his rights granted and protected by Section 3601, 3604, 3605, and 3617 of 42 U.S.C.

63.    The acts of the Defendants were done with the intent of causing extreme emotional distress and were a proximate cause of the damage Allfrey suffered from their conduct. Defendant's actions, which caused mental anguish, severe psychological and emotional distress, as well as physical distress to Allfrey, were beyond the bounds of decency.

64.    The extreme and outrageous acts of the Defendants far exceed malicious, harmful, or offensive conduct resulting in humiliation, shame, anxiety,

depression, weight gain, loss of consortium, insomnia, loss of respect in the public eye, and stress.

## COUNT III
## Defamation

65.    Plaintiff repeats and realleges each and every allegation of the Complaint as if set forth fully in this cause of action.

66.    Defendants have committed actual malice by consciously crafting and deploying lies about Allfrey.

67.    As described above, Defendants have stated and spread false information blaming Allfrey for the Association's failure to obtain D & O Insurance and/or the denial of the Heimkes Claim.

68.    These statements were untrue and defamatory in that they falsely blamed Allfrey for the Board of Directors' failure to secure the D & O Insurance coverage and/or blamed him for the denial of the Heimkes Claim.

69.    Defendants knew or should have known that such defamatory statements were false.

70.    Defendants made such defamatory statements with knowledge of their falsity and/or with a reckless disregard for their truth or falsity.

71.    Defendants' statements constitute defamation because they impugn Allfrey's honesty, trustworthiness, dependability, professional fitness, and abilities by falsely claiming, *inter alia*, that Allfrey was engaged in a campaign to harm FRMCOA Unit Owners.

72.    Defendants' statements constitute defamation because they accuse Allfrey of committing a crime, namely false representation and or insurance fraud.

73.    Defendants' defamatory statements have harmed Allfrey's personal reputation and standing within FMRCOA and have caused him to incur special damages in the form of being outcasted, embarrassment, humiliation, and emotional injury.

74.    As a direct and proximate result of Defendant's defamation, Allfrey has suffered and continues to suffer the loss of standing in the community, loss of public esteem, public disgrace, and emotional distress.

75.    As a direct and proximate result of Defendant's conduct, Allfrey has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

76.    Defendants' defamatory statements were malicious, willful, wanton, and done with the reckless disregard of Allfrey's rights. As such, Allfrey is entitled to an award of punitive damages.

**COUNT IV**
**Defamation *Per Se***

77.     Plaintiff repeats and realleges each and every allegation of the Complaint as if set forth fully in this cause of action.

78.     As described above, Defendants have stated false information regarding, *inter alia*, the circumstances surrounding the D & O insurance for FMRCOA.

79.     These statements were untrue and defamatory in that they falsely reported, *inter alia*, that Allfrey engaged in a fraudulent scheme to deprive FMRCOA of D & O insurance coverage.

80.     Defendants knew or should have known that such defamatory statements were false.

81.     Defendants made such defamatory statements with knowledge of their falsity and/or with a reckless disregard for their truth or falsity.

82.     Defendants' statements constitute defamation *per se* because they impugn Allfrey's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely claiming, *inter alia*, that Allfrey engaged in a scheme or crime to deprive FMRCOA of D & O insurance coverage.

83.     Defendants' statements constitute defamation *per se* because they accuse Allfrey of committing a crime, namely, insurance fraud.

84.     Defendants' defamatory statements have harmed Allfrey's professional and personal reputation and standing in the Resort, have caused him economic harm,

and have caused him to incur special damages in the form of actual pecuniary loss, including the costs of having to defend his name and have caused him embarrassment humiliation and emotional injury.

85.    As a direct and proximate result of Defendant's defamation, Allfrey has suffered and continues to suffer humiliation, loss of standing in the Resort, loss of self-esteem and public esteem, public disgrace, and emotional distress.

86.    As a direct and proximate result of Defendant's conduct, Allfrey has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

87.    Defendants' defamatory statements were malicious, willful, wanton, and done with reckless disregard for Allfrey's rights. As such, Allfrey is entitled to an award of punitive damages.

## COUNT V
### Intentional Infliction of Emotional Distress

88.    Plaintiff repeats and realleges each and every allegation of the Complaint as if set forth fully in this cause of action.

89.    Defendants' intentional dissemination of false and defamatory statements has caused mental and severe psychological and emotional distress, so extreme and outrageous in character and so extreme in degree or to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

90.    Those acts were done with the intent of causing extreme emotional distress and were a proximate cause of the damage Allfrey suffered from their conduct. Defendant's actions, which caused mental anguish, severe psychological and emotional distress, as well as physical distress to Allfrey, were beyond the bounds of decency.

91.    The Defendants are unable to show that any statement at issue alleged herein was made in good faith or that the statements stem from any allegations made by anyone. Painting Allfrey as a liar is so unconscionable and unjustifiable as to warrant his claim for intentional emotional distress.

92.    The extreme and outrageous acts of the Defendants far exceed malicious, harmful, or offensive conduct resulting in humiliation, shame, anxiety, depression, weight gain, loss of consortium, insomnia, loss of respect in the public eye, and stress.

**COUNT VI**
**Invasion of Privacy-False Light**

93.    Plaintiff repeats and realleges each and every allegation of the Complaint as if set forth fully in this cause of action.

94.    Defendants made and shared statements of a false, defamatory, and misleading nature, portraying Allfrey in a false light as described above with intentional, reckless disregard as to their veracity. Allfrey had never before faced

such a frivolous attack on his character and, for the first time in his life, was cast as a liar.

95.    Labeling Allfrey a liar created the false persona and cast the light on Allfrey during the early days of the Association and building relationships with the other Unit Owners. Beyond damage to his reputation, Allfrey suffered extreme humiliation, embarrassment, degrading treatment, and emotional distress so extreme and outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.

96.    We know no one other than the Defendants who have characterized Allfrey as someone who would falsely impersonate an FMRCOA Board Member to damage the FMRCOA Unit Owners financially.

97.    As a proximate result of their intentional and reckless acts in a false light invasion of privacy, the Defendants are liable for damages as detailed in ¶¶ 17, 25, 43-48 and 51-56 *supra*.

98.    The Defendants gave publicity to a matter concerning Allfrey that places him before the Public in a false light. The false light is highly offensive, and the Defendants knew, should have known, and acted in reckless disregard as to the falsity of the publicized matter.

## **RELIEF REQUESTED**

WHEREFORE, Kris Allfrey demands judgment against each Defendant for:

a.   EACH AND EVERY ONE OF THEM INDIVIDUALLY AND ACTING IN CONCERT AS JOINT TORTFEASORS for compensatory damages AND PUNITIVE DAMAGES in excess of $1,500,000 arising from damage to his reputation and from pain and suffering in the form of mental anguish and emotional distress attributable to their actions;

b.   Monetary damages for actual and punitive damages, pursuant to 42 U.S.C. § 3613(c)(1);

c.   An award to the Plaintiff for violations of his civil liberties;

d.   Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f.   Plaintiff requests interest from the date of injury plus costs of this action, attorneys' fees, and such other and further relief as the Count may deem just and proper to do complete justice.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

**Declaration**

I, Kris Allfrey, declare under penalty of perjury under the laws of the United States of America that the statements contained in the Verified Petition are true and correct to the best of my knowledge and belief.

_____

Kris Allfrey

Executed on: _12/19/2022_____

Respectfully submitted this the 19th day of December 2022.

_/s/ Franklin H. Eaton, Jr._

Franklin H. Eaton, Jr. (EAT009)

Attorney for the Plaintiffs
THE CALLAGHAN LAW OFFICE
Post Office Box 1036
Gulf Shores, AL 36547
(251) 285-3425
franklin@callaghanlawoffice.com

**THE DEFENDANTS CAN BE SERVED AT:**

Fairhope Motorcoach Resort Condominium Owners Ass'n., Inc.
via: WM D Calhoun, Registered Agent
319 Magnolia Ave
Fairhope, AL 36532

James Pat Achee
365 Poviner Place
Fairhope, AL 36532

Bill Dockery
11251 Highway 104, Unit 14
Fairhope AL 36532

David Duhe
1882 70th Ave
Baton Rouge, LA 70807