IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KRIS ALLFREY, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) CIV. ACT. NO. 1:22-cv-499-TFM-N |
| | ) |
| FAIRHOPE MOTORCOACH RESORT | ) |
| CONDOMINIUM OWNERS' | ) |
| ASSOCIATION, INC., *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

<u>**MEMORANDUM OPINION & ORDER**</u>

Pending before the Court is Defendants' *Motion to Dismiss* (Doc. 5, filed 02/22/23). Plaintiff filed a response and Defendants filed a reply. Docs. 7, 8. Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move the Court to dismiss the claims brought against them by Plaintiff. After consideration of the motion, response, reply, and applicable law, the motion to dismiss is **GRANTED** as to Plaintiff's federal claims (Counts I and II). Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and they are dismissed without prejudice.

## I.    BACKGROUND

On December 19, 2022, Plaintiff Kris Allfrey ("Plaintiff") originally filed his Complaint with this Court, asserting federal claims for discrimination under 42 U.S.C. §§ 3601, 3604, and 3605 and retaliation under 42 U.S.C. §§ 3601, 3604, 3605 and 3617, as well as state law claims for defamation, defamation per se, intentional infliction of emotional distress, and invasion of privacy. Doc. 1. The answer was due on January 31, 2023, but no answer was filed.

On February 22, 2023, Defendants filed the instant motion to dismiss. Doc. 5. Plaintiff timely filed his response and Defendants timely filed their reply. Docs. 7, 8. The motion to dismiss is fully briefed and ripe for review, and the Court finds oral argument unnecessary.

## II.    STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Because a Fed. R. Civ. P. 12 (b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of the motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g.*, *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1955) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, all factual allegations shall be construed in the light most favorable to the plaintiff. *See, e.g.*, *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989). Obviously, therefore, a district court may not

resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.*, 493 F. App'x 994, 995 (11th Cir. 2012) (citing, among other cases, *Lawrence*, 919 F.2d at 1529, for the proposition that, under Fed. R. Civ. P. 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss). "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'" *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam)); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for [Fed. R. Civ. P. 12(b)(6) purposes.").

## III.   DISCUSSION AND ANALYSIS

Defendants argue that all of Plaintiff's claims are due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). First, Defendants argue that Plaintiff's claim for discrimination fails to state a claim for which relief can be granted because he has failed to provide sufficient factual allegations regarding discriminatory conduct by the Defendants against Plaintiff. Doc. 5 at 3-4. Second, Defendants argue that Plaintiff's claim for retaliation fails to state a claim upon which relief can be granted because he failed to allege factual allegations concerning a recognized adverse action by the Defendants and a causal link between the adverse action and a protected activity. *Id.* at 5. Finally, Defendants also argue that Plaintiff has failed to state a claim for which relief can be granted as to his state law claims. For the reasons stated below, the Court does not address the arguments with respect to the state law claims. Additionally, Plaintiff argues in his reply that the Court should strike and/or decline to consider the motion to dismiss because it was untimely. The Court addresses each argument below, starting with Plaintiff's argument as to timeliness.

**A.  The Court may still consider the Motion to Dismiss, despite Defendants filing it after the answer was due, because an answer has not yet been filed and the rules merely require that a motion to dismiss under 12(b)(6) must be filed prior to the filing of an answer or responsive pleading.**

Plaintiff states in his reply that "[a]s a threshold matter, Plaintiff objects to Defendant's Motion to Dismiss as untimely." Doc. 7 at 1.  Plaintiff therefore requests that the Court decline to consider and/or strike Defendants' motion to dismiss.  *Id.* at 2.  Defendants counter that the motion to dismiss was not untimely and should still be considered by the Court because "[t]he only requirement for filing a 12(b)(6) motion is that it must be filed prior to filing an answer.  No answers have been filed in the present matter; therefore, the motion is timely." Doc. 8 at 12.

Under Rule 12, "a motion asserting any [12(b)] defenses must be made before pleading if a responsive pleading is allowed."  FED. R. CIV. P. 12(b).   While Rule 12(a) provides that an answer must be served within 21 days of being served with the summons and complaint, nothing in Rule 12 specifies that a motion to dismiss must be filed within 21 days.  *See* Fed. R. Civ. P. 12. Thus, while Defendants filed the motion to dismiss approximately 22 days after the answer was due, no answer has been filed in this action and the motion to dismiss therefore was proper under Rule 12.[1]

Accordingly, the Court declines Plaintiff's request to not consider and/or strike Defendants' motion to dismiss and proceeds to consider Defendants arguments.

**B.  Plaintiff has failed to state a claim for discrimination in violation of the Fair Housing Act because he failed to provide sufficient factual allegations regarding discriminatory conduct by the Defendants.**

First, Defendants argue that Plaintiff's cause of action for discrimination under the Fair Housing Act is due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff failed to

---

[1] While Plaintiff could have moved for default after Defendants failed to timely file an answer, he did not.  The opportunity for Plaintiff to move for default has now passed as Defendants have now appeared.  *See* FED. R. CIV. P. 55.

allege factual allegations sufficient to show discriminatory conduct by the Defendants. Plaintiff counters that he has complained of "actions by Defendants that have the effect of limiting his enjoyment of his rental unit because Defendants' intimidation, harassment, cohersion [sic], defamation all designed to ridicule and oppress Plaintiff . . .." Doc. 7 at 4. Specifically, Plaintiff claims that he "was targeted by Defendants because of his support for Mr. Heimkes and was singled out as the reason the Unit Owners had to pay more than $110,000 in legal fees," which allegedly caused several residents to make unwelcoming comments to Plaintiff. *Id.* at 5.

The Fair Housing Act provides that it is unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person . . . [or] any person associated with that person.

42 U.S.C. § 3604(f)(2). "[T]o avoid dismissal, a plaintiff's complaint 'must provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 625 (11th Cir. 2015) (citing *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)).

The discriminatory action that Plaintiff alleges Defendants took is telling the other unit owners that Plaintiff was the reason that they had to pay $110,000 in legal fees. *See* Doc. 1 at 1; Doc. 7 at 5. Plaintiff also makes several allegations in the complaint regarding alleged hostile communications received from other unit owners. Doc. 1 at 5-8.

It is clear from Plaintiff's allegations in his complaint that Plaintiff, not Defendants, is the one who sent emails to all unit owners which included his assertion that the Board failed to obtain Directors and Officers Insurance coverage and other comments about the Defendants' actions. Doc. 1 at 5, 14. Further, it is clear that the hostile communications Plaintiff complains of from other unit owners, and asserts are the result of Defendants' alleged comments during a meeting

held on November 5, 2021, occurred before the meeting was ever held.  *See* Doc. 1 at 19 (stating that during the meeting on November 5, 2021 Defendants informed attendees that "the insurance was denied because one of the owners [Allfrey] reached out to the insurance company under the pretense, he was representing FMR and advised them of the lawsuit . . ."); *see also* Doc. 1 at 5-7 (stating that the hostile emails to Plaintiff from other unit owners were sent on or about March 4, 2021 through March 6, 2021).  Furthermore, the alleged discriminatory statement by Defendants about Plaintiff to the other owners during the meeting did not even name Plaintiff, as evidenced by Plaintiff adding his own name to the quote in brackets.  Doc. 1 at 19.

All in all, it is clear from the face of the complaint that the hostile communications received by Plaintiff from other unit owners arose from communications by Plaintiff himself to all unit owners, not from any action by Defendants.  Further, Defendants are not responsible for the individual actions of the unit owners, particularly where the unit owners' actions stemmed from emails sent by Plaintiff himself.  It is also evident from the face of the complaint that Defendants did not name Plaintiff during the November 5, 2021 meeting as the reason that the insurance claim was denied, and even if they did, the statement came *after* Plaintiff received the alleged hostile communications from other unit owners.

Furthermore, in his claim for discrimination, Plaintiff makes a blanket statement that "Defendant did unlawfully coerce, intimidate, threaten, interfere, and discriminate against plaintiff in the exercise and enjoyment of the rental of Units in FMR for having aided and encouraging Mark Heimkes, a disabled person in the exercise and enjoyment of his rights . . .."  Doc. 1 at 23. However, the only factual allegations that Plaintiff asserts in support of this claim are those already addressed in this section, which, as previously noted, are insufficient.  Additionally, Plaintiff has not even alleged what terms, conditions, or privileges he has been denied.  Rather, Plaintiff's complaints amount to merely a general assertion that he is disliked by his neighbors and

Defendants.  Thus, Plaintiff has failed to plead facts sufficient to support a claim for discrimination under the Fair Housing Act.

Accordingly, Defendants' motion to dismiss Plaintiff's claim for discrimination under the Fair Housing Act is due to be **GRANTED**.

**C.  Plaintiff has failed to state a claim for retaliation under the Fair Housing Act because he failed to allege facts concerning a recognized adverse action by the Defendants and a causal link between the adverse action and a protected activity.**

Second, Defendants argue that Plaintiff's cause of action for retaliation under the Fair Housing Act is due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff failed to allege facts to show both a recognized adverse action by the Defendants and a causal link between such adverse action and a protected activity.  Plaintiff counters that,

> [t]he Complaint alleges that Defendants took adverse action that is causally connected to the protected activities of aiding Mr. Heimkes with his request for a reasonable accommodation.  More specifically, Plaintiff alleges Defendants have specifically targeted Plaintiff by blaiming [sic] him for the D & O Insurance Company denying to cover the Heimkes legal fees because of his support of Mr. Heimkes and for pointing out the Directors discrimination against Mr. Heimkes for refusing to grant him a reasonable accommodation.

Doc. 7 at 9.

"To establish a prima facie case of retaliation [under the Fair Housing Act], a plaintiff must show that: (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Philippeaux v. Apt. Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015).  "Under the FHA, an adverse action must 'coerce, intimidate, threaten, or interfere with the party.'" *Joseph's House & Shelter, Inc. v. City of Troy*, 641 F. Supp. 2d 154, 159 (N.D. N.Y. 2009); *see also Johnson v. Housing Auth. Birmingham Dist.*, Civ. Act. No. 2:17-cv-01474-AKK, 2018 WL 619845, 2018 U.S. Dist. LEXIS 14610, at *21 (N.D. Ala. Jan. 30, 2018) (noting that the defendant's conduct must rise "to the level of threats, coercion, intimidation or interference necessary to rise to an

adverse act under the FHA."). Additionally, an adverse action "must have some materially adverse effect on the plaintiff." *Joseph's House & Shelter, Inc.*, 641 F. Supp. at 159. To be clear, the Court is not saying that a Plaintiff must produce evidence at the pleading stage. But rather, when construing all facts in the light most favorable to the Plaintiff, that an allegation can fairly establish that a claim can be made (which is a prima facie case).

Here, Plaintiff again claims that the adverse action taken by Defendants was that they blamed him for the denial of D & O insurance coverage. Doc. 7 at 9. As already noted in the above section, it is evident from the face of the complaint that Defendant did not name Plaintiff during the November 5, 2021 meeting as the reason that the insurance claim was denied. Further, the hostile communications that Plaintiff received from other unit owners was the result of Plaintiff's own actions, not the Defendants', as evidenced by the email exchanges included in Plaintiff's complaint. Plaintiff does not identify any other alleged adverse action taken by Defendants in support of his retaliation claim. Thus, while aiding Mr. Heimkes with his request for an accommodation may be a protected activity under the first factor, Plaintiff has failed to plead an adverse action by Defendants connected to that activity and thus fails the second and third factors.

Accordingly, Defendants' motion to dismiss Plaintiff's claim for retaliation under the Fair Housing Act is due to be **GRANTED**.

**D. Plaintiff's state law claims**

Finally, Defendants argue that Plaintiff's state law claims are also due to be dismissed for failure to state a claim upon which relief can be granted.

A court's exercise of supplemental jurisdiction over remaining state law claims is discretionary. Under 28 U.S.C. § 1367(c)(3), a district court may "decline to exercise supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over

which it has original jurisdiction...."  The United States Supreme Court has held:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  [ ] Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

Likewise, in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), the Supreme Court reiterated that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."

The Eleventh Circuit has further explained that "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999), *cert. den.*, 528 U.S. 820, 120 S. Ct. 63, 145 L. Ed. 2d 55 (1999) (citing *Gibbs*, 383 U.S. at 726); *see also Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 811 (11th Cir. 2006) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims."); *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) (finding that "[b]oth comity and economy are served when issues of state law are resolved by state courts.").

Here, the Court has dismissed all of Plaintiff's claims over which it has original jurisdiction.  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims are **DISMISSED without prejudice**.

## IV.    CONCLUSION

Accordingly, for the reasons stated above, the motion to dismiss (Doc. 5) is **GRANTED** as to Plaintiff's federal claims (Counts I and II), which are **DISMISSED with prejudice**.  The

Court declines to exercise supplemental over Plaintiff's state law claims (Counts III, IV, V, and VI), which are **DISMISSED without prejudice**.

A separate judgment will be entered pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this 25th day of July, 2023.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE